S. & R.
3sr 54
200 8

1817.

*Philadelphia.* BYRNE and another *against* BYRNE and others, exe-
cutors of BYRNE.

*Saturday,*
*January 11.*

A, being in-
debted to his
sons, B, and
C, in the sum
of 350*l.* Irish
sterling, made
his will, in
which he can-
celled debts
amounting to
more than
10,000 dollars,
due to him
from B, whom
he had also
previously ad-
vanced to the
amount of
6000 dollars,
and then gave
him 500 dol-
lars, and *no*
*more.* To C,
he gave some
small specific
legacies, and
one fourth of
the residue of
his estate,
which he di-
rected to be
equally divi-
ded between
his wife, his
son, C, and his
two daughters,
after certain
legacies to his
wife, his
daughters, and
other persons.
He died, leav-
ing a small
real estate,
and personal
property
worth 255,000
dollars. *Held,*
that the debt
due from the
testator to his
sons, was not
extinguished
by any thing
contained in
the will.

CASE stated. *Patrick Byrne*, the testator, was, at the
time of his death, indebted to the plaintiffs in the sum of
three hundred and fifty pounds and upwards, Irish sterling,
monies belonging to them in right of their mother, who was
the testator's first wife.

On the 15th *May*, 1813, *Patrick Byrne* made his will, and
about the 20th *February*, 1814, he died, leaving issue, *Pa-*
*trick Byrne* jun. and *Henry C. Byrne* the plaintiff, children
by his first wife, and two daughters by his second wife, who
also survived him.

At the time of the testator's death, his son *Patrick* was
separately indebted to him in the sum of 10,778 dollars, or
thereabouts, and shortly before the death of his father, *Pa-*
*trick* received as a gift from him, the stock in trade of a
bookseller's establishment which he had in *Baltimore*, worth
at least 6000 dollars; but the plaintiffs were not jointly in-
debted to him, nor was *Henry* separately indebted to him.

He left real and personal property to the amount of 255,000
dollars.

The question for the opinion of the Court was, whether,
by any thing contained in the will of *Patrick Byrne*, the
plaintiffs were precluded from maintaining this action, which
was brought to recover the money due to them in right of
their mother.

The will of the testator did not contain the usual direc-
tion to his executors to pay his just debts, but, after giving
them some instructions which it is not material to state, pro-
ceeded as follows :

" I give and bequeath to my beloved wife, my household
furniture and plate, by which I include every thing for use
or ornament in my house, she giving to my son *Henry*, as
much therefrom, as will completely furnish a chamber for
his use.

" I also bequeath to my wife, my shares in the Domestic
Society, and in the Ridge Turnpike Company.

" I give and devise my tract of land, containing six acres
and five perches, situate on the *Ridge* road, county of *Phi-*

*ladelphia*, also, one other tract adjoining on *Williams'* lane, containing seven acres and fifty-two perches, together with the improvements on both, to my beloved wife for her life; and after her death, I devise the said tracts of land to my two daughters, *Mary* and *Ellen Byrne*, in fee, to be equally divided between them.

"And whereas, my son, *Patrick Byrne*, is indebted to me in sundry sums advanced for his benefit, my will is, that all his debts to me be cancelled; and I bequeath to him the sum of five hundred dollars, and *no more*.

"I give and devise to my stepson, *Daniel Coleman*, in fee, my tract of land with the appurtenances, called *Bloomfield*, in *Bald Eagle* township, *Centre* county, *Pennsylvania*, containing four hundred and fifteen acres, and I give him five hundred dollars for the purpose of improving it.

"All the residue of my real estate, I devise to my executors to sell, and the proceeds thereof shall be equally divided between my wife, my son *Henry*, and my daughters, *Ellen* and *Mary*.

"I give to my son *Henry*, such library of law and of miscellaneous books, as at the time of my decease he may have selected.

"In consideration of the fidelity of my young man, *Alexander M'Causland*, I give him five hundred dollars, and to his brother, *John M'Causland*, I bequeath the sum of two hundred and fifty dollars.

"All my estate, real, personal, and mixed, not herein before disposed of, I devise and bequeath to my wife, my son *Henry*, and my daughters, *Mary*, and *Ellen*, to be equally divided between them."

"I appoint my beloved wife, my son *Henry C. Byrne*, and *Alexander M'Causland*, executors of this my last will."

*Rawle*, jun. and *C. J. Ingersoll*, for the plaintiffs. The rule by which a debt due from a testator to his legatee, is, in some cases, construed to be extinguished, has no foundation in reason; and is altogether inconsistent with those principles which usually govern the decisions of courts of justice. At a time when legal subtleties were more in vogue than at present, most of those absurd rules, which, while they displayed the ingenuity of the professors of the law, tended to confuse the great principles of the science, crept into the

1817.

BYRNE
and another
*v.*
BYRNE
and others
executors of
BYRNE.

*English* books.   A more enlightened age produced a corres-
pondent effect in the minds of the Judges, who though com-
pelled by respect for ancient authority to recognise the exist-
ence of rules which had long been established, confined their
operation within as narrow a compass as possible ; and this
rule in particular, which has as little good sense to support it
as any other that can be imagined, may be said to have been
almost smothered in exceptions.   The maxim, that a man
must be just before he is generous, was formerly so strictly
enforced, that a testator was almost universally construed to
have paid a debt, and not to have bestowed a bounty.   The
rigour of the ancient rule has, however, been gradually sof-
tened, and the inclination of the *English* courts has been for
a long time most strongly against it.   In *Fowler* v. *Fow-
ler,(a)* Ld. Ch. Talbot declared, that if this were a new
point to be considered, then, for the first time, he would be
very far from giving into it.   " If," says Lord Hardwicke,
in *Richardson* v. *Greese,(b)* " the maxim, *debitor non presu-
" mitur donare* were to be re-considered, it would not hold.
" Courts are fond of taking cases out of this rule."   That a
man should be just before he is bountiful, is a moral as well
as a legal truth ; " but it is as good equity," says Ld. Ch.
Cowper, " to construe a man to be both just and bountiful
" where he has it in his power to be so."   *Cuthbert* v. *Pea-
cock.(c)*   The same liberal spirit has marked all the modern
decisions, and the rule is at this day so much narrowed
down, that unless the intention of the testator, the polar star
in every will, evidently be that it shall take effect, it is not
permitted to contravene a favourite maxim of the law, that
every legacy implies a bounty, and that, therefore, when a
man says he *gives*, he is not to be understood to have *paid*
only.

   In order to operate as a satisfaction of a debt, it is neces-
sary, 1. that the legacy should be at least equal in amount to
the debt.   2. That it should take effect immediately on the
death of the testator.   3. That it should depend on no con-
tingency.   4. That the subject of the legacy should be of the
same nature as the debt.   If any of these features be want-
ing, it is a bounty and not a satisfaction.   *Roberts on Wills,*
434. 4 *Bac. Ab.* 367.   *Meredith* v. *Wyne.(d)*   *Cranmer's*

1817.

Byrne
and another
v.
Byrne
and others
executors of
Byrne.

(a) 3 *P. Wms.* 353.          (c) *Salk.* 155.
(b) 3 *Atk.* 65.                    (d) *Prec. in Ch.* 314.

*case.(a)* Fowler v. *Fowler.(b)* Nicholls v. *Judd.(c)* East- 1817.
wood v. *Vinke.(d)* Richardson v. *Greese.(e)* In *Chauncey's* BYRNE and another v. BYRNE and others executors of BYRNE.
case,(*f*) a bond was given for *wages;* a legacy five times the
amount of the debt was given to the obligee as a compensa-
tion for *services;* the legacy was to take effect immediately
on the death of the testator, yet the Court laid hold of the
circumstance of the testator's directing all his just debts to
be paid, to take the case out of the rule. *Cuthbert* v. *Pea-*
cock,(*g*) is a still stronger authority against the rule. H,
owed his niece A, 100*l.* and having two other nieces, B, and
C, made his will, and bequeathed 300*l.* to A, and to B, and
C, 200*l.* each. After that, he borrowed 100*l.* more of A,
and died. It would seem, that the rule would apply to such
a case as this, if to any; yet so odious and unreasonable did
the Court consider it, that they permitted testimony to be
given to explain the will; and because there was some proof
of the testator's greater kindness towards A, than towards
his other nieces, decreed, that she should have both the debt
and the legacy. These cases shew, what has for a long time
been the uniform course of the English Courts of Chancery
in relation to this subject. Unless, therefore, it can be clearly
shewn to have been the intention of *Patrick Byrne,* that his
two sons should not enjoy his bounty as well as the debt due
in right of their mother, they are entitled to recover. The
will is very far from disclosing any such intention.

At the time of the testator's death, he possessed some real
property in addition to a large personal estate. He left a
wife and four children, to whom it must be supposed he was
equally attached, since he was bound to them all by the same
natural ties, and nothing had occurred, so far as appears, to
alienate his affections from any of them. Thus circumstanced,
it might be supposed he intended to do equal justice to all,
and, that such was his intention, is manifest from his will,
though he failed in the execution of it. Between *Patrick,*
and himself, there had been dealings in trade, in the course
of which, the son became indebted to the father, to a consi-
derable amount, and also received a gift of the *Baltimore*
stock. Ignorant of the precise amount of his personal pro-

(a) *Salk.* 508.        (e) 3 *Atk.* 65.
(b) 3 *P. Wms.* 353.        (f) 1 *P. Wms.* 508.
(c) 2 *Atk* 301.        (g) *Salk.* 155.
(d) 2 *P. Wms.* 617.

1817.

BYRNE
and another
*v.*
BYRNE
and others
executors of
BYRNE.

perty, Mr. *Byrne* probably supposed, that what he had already given to this son, in addition to the debts due from him, would equal a child's share of his estate. He, therefore, merely cancelled his debts, and gave him 500 dollars ; a sum, small in amount, but sufficient to shew the disposition of his mind. Thus, the donation of the *Baltimore* stock, together with the cancelling the debts, may be set off against a child's share of the estate. If this view of the case be correct, the cancelling the debts cannot be considered as a legacy, and was therefore no extinguishment of the debt due from the testator. It may be said, that a father is under no obligation to leave any portion of his property to his children, and that, therefore, the debts of the son to the father, cannot be put into the scale against a share of the paternal estate. There is, indeed, no legal obligation, but there is a natural and moral obligation, which Courts never hesitate to recognise.

Having disposed of the cancelling of *Patrick*'s debts, the only circumstances which stands in his way, is the legacy of 500 dollars. The law is perfectly clear, that where the legacy is smaller in amount than the debt, it is no satisfaction. The debt due from Mr. *Byrne* to his sons, was 350 pounds, Irish sterling, besides interest. A pound Irish, is equal in value to four dollars ; therefore, *Patrick*'s share of this debt is 700 dollars, without reckoning interest, which cannot be extinguished by a legacy of 500 dollars. When the testator said, I give to my son *Patrick*, 500 dollars, and *no more,* it cannot be supposed he intended to deprive him of a debt honestly due, but merely to declare that he should participate no further in his bounty.

With respect to *Henry*, the case is even stronger. He was not indebted to his father ; he had not been advanced ; there was no particular legacy to him. The will directs, after giving certain specific legacies, that he shall have one fourth of the residue of the testator's estate. This is believed to be the first time it was ever contended, that a gift by a father to his son of a share of his estate, was a discharge of a debt due from the father to the son. It is to be observed, that the testator made a more ample provision for his daughters than for either of his sons. Whence this difference? The reason is obvious. He knew that they were already partially provided for from their mother's estate, and

therefore, to place all his children on equal ground, he gave the most to those who had nothing before.

1817.

BYRNE
and another
v.
BYRNE
and others
executors of
BYRNE.

What is conclusive against the application of this rule to *Henry*, is, that his share of the residue of the estate could not be ascertained, until after the testator's death. The law is perfectly settled, that a debt is not to be lost, for an uncertain and contingent recompense. To be a satisfaction, it must be so at the time of its creation. This cannot be where the amount of the legacy cannot be ascertained, until after the testator's death. The sale of stock depends on a variety of circumstances, and until it is made, it is impossible to know, whether the legacy will exceed or fall short of the debt. These observations apply particularly to the case of *Henry ;* but as the debt is due to the brothers jointly, they cannot be separated. It must be extinguished as to both or neither.

*Allibone*, for the defendants, argued, that a series of decisions had established the rule, that where a man gave to his creditor a legacy equal to or greater in amount than the debt he owed him, the legacy was to operate as an extinguishment of the debt. This rule was founded in justice, and ought not now to be unsettled. Although many cases had, under particular circumstances, been taken out of it, the rule itself had never been shaken, and unless the plaintiffs could make it appear, that it was the intention of the testator, that they should be paid their debt, as well as receive his bounty, they must relinquish one or the other. In those cases in which the English chancellors had held that the rule did not apply, there had been a direction in the will to pay the testator's debts, proof of particular affection and regard towards the object of his bounty, or some other circumstance of a similar nature, which shewed it to have been his intention, that the debt should not be extinguished. In the will of Mr. *Byrne*, the usual direction for the payment of debts is omitted, and there is nothing from which it appears, that either of his sons was the object of his peculiar favour. After cancelling the debts of *Patrick*, he gives him 500 dollars, and *no more*, which plainly shews, that he was dissatisfied with his conduct, and intended to cut him off from all further claim upon his estate. The legacy of 500 dollars, was not the only bounty bestowed upon *Patrick*. His debts

1817.

BYRNE
and another

BYRNE
and others
executors of
BYRNE.

to the amount of 10,778 dollars were cancelled, which is in all respects a legacy equal to that sum; a legacy certain in amount, dependent on no contingency, to take effect immediately on the testator's death, and large enough to cover the whole of the debt due from the testator to his sons. Nor is *Henry*'s claim better founded than that of *Patrick*. He was entitled to one fourth of the residue of his father's estate, which his father knew could not be less than 50,000 dollars. After bestowing so much upon his sons, it is not to be supposed, that he intended his estate should be subjected to the payment of a comparatively small debt, to persons for whom he does not appear to have had any particular regard. He was under no greater legal obligation to give a portion of his property to his sons than to strangers; but, having given to them so liberally, he has exonerated his estate from all further claim.

TILGHMAN C. J. was not present, and gave no opinion.

YEATES J. It is indisputable, that the intention of a testator expressed in his will, and fairly collected therefrom, shall govern its construction. Courts of justice, in order to preserve uniformity of decision, and thereby give stability to property, have adopted certain legal principles, to which they will adhere in all proper cases. But it is obvious, that decisions upon wills, are less authoritative than in other instances, arising from the great variety of motives which influence different men, in the disposition of their property, and their manner of conveying their meaning.

A rule has prevailed, that wherever a person by his will, gives a legacy as great or greater than the debt he owes to the legatee, such legacy shall be a satisfaction of the debt, on the presumption that a man must be intended just, before he is bountiful, and that his intent is to pay a debt, and not to give a legacy, 1 *Equ. Abr.* 203. 2 *Salk.* 508. 2 *Vern.* 177. 258. 298. The rule itself is not founded in reason, and often tends to defeat the bounty of testators, and able chancellors have thought it more agreeable to equity, to construe a testator to be both just and generous, where the interests of third persons are not affected. And courts of justice will now lay hold of slight circumstances to get rid of the rule. Legacies are considered as gratuities, and are always

1817.

BYR·E
and another
v.
BYRNE
and others
executors of
BYRNE.

construed favourably. If they be less than the sum due, payable on a contingency, or a future day, on these and *the like circumstances*, they will be construed as additional bounties, and not as satisfactions, 4 *Bac.* 367. And although the contingency does actually happen, and the legacy thereby becomes due, yet it shall not go in satisfaction of the debt, because a debt which is certain, shall not be merged or lost by an uncertain and contingent recompense. For whatever is to be a satisfaction of a debt, *ought to be so in its creation*, and at the very time it is given, which such contingent provision is not. *Prec. Cha.* 395. *Talbot* v. *Duke of Shrewsbury, et al.* I am far from wishing to break through any settled rule of decision, and yet I cannot but fully agree with Mr. *Finch* in his note to this case, that according to the most modern decisions, *it is presumed*, that the legacy must be *in all respects, ejusdem generis*, to cause a satisfaction of the debt, and *an apparent intention* in the will, that the testator meant it as such.

Taking the whole of the will together, my mind is satisfied, that both plaintiffs stand precisely on the same ground as to their *joint* demands, in right of their mother on their father's estate. Both of them are precluded from maintaining this suit, or neither of them.

The gratuity of the father, of the *Baltimore* stock in trade, amounting to at least $ 6000, to *Patrick*, can have no effect on our decision. It is stated in the case, to be a voluntary *gift* by the testator to his son.

It has been objected, that there was no general direction in the will, that the testator's debts should be paid by his executors. This can be of no moment in *Pennsylvania*, where all the estate real and personal of deceased persons, are made assets for the payment of debts, as was decided in *Smith* v. *Smith's executors*, 1 *Binn.* 211. In this State, such direction is mere matter of form, pursuing the English precedents. The law imposes on executors and administrators, the obligation of discharging the debts of their testator or intestate.

It is also much relied on, that the testator bequeathed to *Patrick*, 500 dollars, and *no more*, and that these last words necessarily imply an intention, that he should have no other claim on the estate. I cannot assent hereto. If such was his meaning, he might clearly have expressed it. But the

1817.

BYRNE
and another
v.
BYRNE
and others
executors of
BYRNE.

plain meaning of these expressions is, that *Patrick* should participate the *bounty* of his father no further; not that he should surrender up an honest debt of 700 for 500 dollars: In this particular only, can we discover any dissatisfaction of the father with his eldest son, when he excludes him from a share of the residuum. Nor do I deem the cancelling of the debt of $10,778, as equivalent *in all respects*, to a devise of so much money. It was not *ejusdem generis*, with the sum he owed to his two sons *jointly*, when, as it is stated in the case, the two plaintiffs were not *jointly* indebted to him, nor was *Henry separately* indebted to him.

Although *Henry* is declared by the will to be entitled to one-fourth part of the residuum, it was but a contingency whether his distributive share would surmount his proportion of the 350*l.* sterling, or not. The strong probability, it is true, was that it would exceed it; but the amount was not certain; and it lay within the range of human events, and the vicissitudes of trade, that the testator's affairs might, by possibility, wind up differently. The amount of the legacy *in its creation* was uncertain, and the recompense *contingent.*

It is a circumstance of weight in my mind, in the present instance, that there is no deficiency of assets whereby fair creditors might be exposed to the risk of losing part of their honest demands. This was relied on by Ld. Ch. COWPER, in *Cuthbert* v. *Peacock*, 1 *Salk.* 155.

Upon the whole will, I am of opinion that there is not such an *apparent intention* disclosed therein, that the testator meant his two sons should be barred or precluded from maintaining this action for their maternal debt; and therefore judgment should be entered for plaintiffs.

GIBSON J. concurred.

Judgment for the plaintiffs.